AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of _____ in the _____ District of _____, the defendant(s) violated:

*Code Section*          *Offense Description*




This criminal complaint is based on these facts:




☐ Continued on the attached sheet.

_____
*Complainant's signature*

_____
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: _____

_____
*Judge's signature*

City and state: _____

_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kimberly Simmonds, being first duly sworn, hereby depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Detective with the Altamonte Springs Police Department, and I have been so employed since May 2015. Since May 2022, I have been assigned as a Task Force Officer to the Federal Bureau of Investigation ("**FBI**") Tampa division's Orlando Resident Agency, Joint Terrorism Task Force. I attended the basic law enforcement academy at the Valencia Criminal Justice Institute in Orlando, Florida. I have been trained in obtaining probable cause, surveillance techniques, the interviewing of subjects and witnesses, and the planning and execution of arrest, search, and seizure warrants. I have also received advanced training on the following topics, among others: search and seizure, weapons of mass destruction investigations and operations, counterterrorism investigations, USSS Bitcoin and cryptocurrency, and financial investigations.

2. I submit this affidavit in support of a criminal complaint charging HANI WAFIK KAAKATI ("**KAAKATI**"), a U.S. citizen who resides in Sanford, Florida, with wire fraud, in violation of 18 U.S.C. § 1343. The elements of wire fraud are:

    a. the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

    b. the false pretenses, representations, or promises were about a material fact;

    c. the Defendant acted with the intent to defraud; and

    d. the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

3. The statements contained in this affidavit are based on my personal knowledge and experience, and reliable information from other law enforcement officers and computer databases. Because of the limited purpose of this affidavit, I have not included each and every fact known to me. Rather, I have included only those facts necessary to establish probable cause supporting the requested complaint.

## PROBABLE CAUSE

### Relevant Entities

4. NextGear Automotive, LLC ("NextGear Automotive") was a Florida company that was registered on or about May 17, 2013. **KAAKATI** was listed in Florida Department of State Division of Corporations ("FL/DOC") records as the registered agent of NextGear Automotive. The Authorized Person(s) Detail listed the "Title MGR" as **KAAKATI**, 5113

2

Filmore, Sanford, Florida. The principal address of NextGear Automotive was 5113 Filmore Place, Sanford, Florida.

5. NextGear Auto LLC ("NextGear Auto") was a Florida company that was registered on or about September 9, 2019. M.N. was listed in FL/DOC records as the registered agent of NextGear Auto. The Authorized Person(s) Detail listed the "Title MGR" as M.N., 5113 Filmore Place, Sanford, Florida. The principal address of NextGear Automotive was 5113 Filmore Place, Sanford, Florida.

6. MMK Properties, LLC ("MMK Properties") was a Florida company that was registered on or about April 30, 2007. D.K. was listed in the FL/DOC records as the registered agent. The Authorized Person(s) Detail listed the "Title MGRM" as D.K. and the "Title VP" as M.N., both located at 2541 South Magnolia Avenue, Sanford, Florida.

7. FlexPlus LLC ("FlexPlus") was a Florida company that was registered on or about September 18, 2015. The principal address of FlexPlus was 2800 North Highway 17-92, Longwood, Florida.

**Relevant Individuals**

8. **KAAKATI**, a U.S. citizen residing in Sanford, Florida, was an independent car dealer who owned NextGear Automotive. **KAAKATI** was

licensed in Florida to sell used cars at retail and wholesale prices, which he did through NextGear Automotive.

9. M.N. was a U.S. citizen residing in Sanford, Florida. According to records obtained from the Lebanese Republic Ministry of Interior General Directorate of Civil Status, M.N. and **KAAKATI** were married on October 11, 2006. M.N. filed for divorce on September 16, 2019, which was finalized on or about October 20, 2019.

10. B.C. was employed by FlexPlus as an accountant.

11. S.A. was the general manager of FlexPlus.

**Corresponding Financial Accounts**

12. According to Bank of America records, **KAAKATI** opened the checking account ending in #3675 in the name of NextGear Automotive on February 19, 2019. The account opening documents were signed by **KAAKATI**.

13. According to CenterState Bank records, M.N. and D.K. opened the checking account ending in #4529 in the name of MMK Properties on or about June 29, 2016.

**Introduction to Wire Fraud Scheme**

14. According to its website, FlexPlus is a floorplan financing company catering to independent used car dealers and wholesalers. Based on

4

my knowledge of this investigation, I know that floorplan financing companies (like FlexPlus) extend lines of credit to a car dealer using the inventory as collateral. As the car dealer sells their inventory, the original principal for the car, plus interest and fees, is paid back to the floorplan financing company. This allows a car dealer to stock their lot with a lesser initial investment. I also know, based on my knowledge of this investigation, that the floorplan financing company typically retains control of a car title until a car is paid off.

15.  On or about April 1, 2019, **KAAKATI**, doing business as NextGear Automotive, signed a term sheet with FlexPlus, which, among other things, stated that NextGear Automotive's credit limit was $200,000. As part of their business relationship, **KAAKATI** had signed an Automated Clearing House (ACH) authorization form, permitting FlexPlus to initiate ACH transactions from NextGear Automotive's Bank of America checking account ending in #3675.

16.  On or about August 2, 2019, **KAAKATI**'s floorplan line of credit with FlexPlus increased to $600,000, which was memorialized in a new, signed term sheet.

17.  According to Bank of America records, on or about Friday, September 20, 2019, at approximately 12:05 p.m., $550,000 was withdrawn

via cashier's check from NextGear Automotive's checking account ending in #3675. The cashier's check's number ends in #664 and was made payable to MMK Properties.

18. I have reviewed surveillance footage provided by Bank of America in Ocoee, Florida, related to the above-described transaction. In reviewing the footage (which does not have audio), I observed **KAAKATI** approach the teller's counter at approximately 11:44 a.m. on September 20, 2019, with what appears to be a cellphone in his left hand and nothing in his right hand. At approximately 12:07 p.m., **KAAKATI** is seen leaving the teller counter with a white envelope in his left hand and what appears to be his driver's license in his right hand.

19. Later that same day, **KAAKATI** went to FlexPlus's office in Longwood, Florida, where he interacted with B.C. According to the sworn written statement that B.C. provided to law enforcement, **KAAKATI** told B.C. that he was at FlexPlus to make a lot of payments, which **KAAKATI** wanted to do in two batches. **KAAKATI** had instructed B.C. that one batch could be processed then, and the second batch could be processed after 3:00 p.m. that day, so that it would be cleared on Tuesday, September 24, 2019. Once B.C. had realized the amount for which **KAAKATI** was trying to pay and collect car titles, B.C. informed **KAAKATI** that he did not feel

6

comfortable transferring the titles. **KAAKATI** then purported to show B.C. on **KAAKATI**'s phone the most recent transactions in his bank account, specifically two deposits. One deposit was for over $200,000; the other was for over $500,000. Based on that showing of available funds, B.C. released 24 car titles to **KAAKATI** for which **KAAKATI** owed FlexPlus $528,337.98.

20.   According to Bank of America records for the account number ending in #3675, the ending balance on September 19, 2019, was $553,718.18. The ending balance on September 20, 2019, was $218.18, which reflects the withdrawal of $550,000 via cashier's check, as well as another withdrawal for $3,500.

21.   Based on my training and experience, and my knowledge of this investigation, I know that when a cashier's check is used to withdraw funds from an account, the amount reflected on the cashier's check is immediately removed from the account by the issuing bank and placed in a separate in-house account awaiting to be paid out. Accordingly, I believe that **KAAKATI** likely showed B.C. a balance in his bank account that did not reflect the actual amount of funds available.

22.   That same day, FlexPlus attempted to collect payment from **KAAKATI** for one set of car titles consistent with what he had discussed with B.C. According to a collections report generated by FlexPlus, Flexplus

attempted 24 ACH transactions on September 20, 2019, and September 23, 2019, corresponding to the 24 car titles that were transferred to **KAAKATI**.

23. The following table sets forth the 24 ACH transactions that FlexPlus initiated based on **KAAKATI**'s representation that he had sufficient funds to pay for the car titles that B.C. had transferred to him.

| Last Six Digits of Vehicle Identification Number (VIN) | ACH Payment Amount | Date of ACH |
|---|---|---|
| 522792 | $30,300.00 | 09/20/2019 |
| 526639 | $8,770.00 | 09/20/2019 |
| D15877 | $21,830.00 | 09/20/2019 |
| 409755 | $27,040.00 | 09/20/2019 |
| 106528 | $28,185.00 | 09/20/2019 |
| 000852 | $36,600.00 | 09/20/2019 |
| H37271 | $18,625.00 | 09/20/2019 |
| 244838 | $7,280.00 | 09/20/2019 |
| 198547 | $8,285.00 | 09/20/2019 |
| 340998 | $4,820.00 | 09/20/2019 |
| 114323 | $10,970.00 | 09/20/2019 |
| 266603 | $47,498.83 | 09/23/2019 |
| 376582 | $44,726.78 | 09/23/2019 |

| | | |
|---|---|---|
| A68580 | $9,122.72 | 09/23/2019 |
| A38570 | $18,869.31 | 09/23/2019 |
| 380430 | $15,700.00 | 09/23/2019 |
| C44734 | $30,835.00 | 09/23/2019 |
| 394440 | $25,255.00 | 09/23/2019 |
| 028774 | $25,485.00 | 09/23/2019 |
| 051103 | $22,305.00 | 09/23/2019 |
| 297975 | $4,720.00 | 09/23/2019 |
| 153749 | $18,195.00 | 09/23/2019 |
| 119000 | $38,601.55 | 09/23/2019 |
| 454970 | $24,318.79 | 09/23/2019 |

24. Records from IBERIABANK reflect that 11 ACH transactions originated by FlexPlus totaling approximately $202,705 were returned for insufficient funds by the receiver, NextGear Automotive, with receiver account number ending in #3675. IBERIABANK records also show that 13 ACH transactions originated by FlexPlus totaling approximately $325,632.98 were returned for insufficient funds by the receiver, NextGear Automotive, with receiver account number ending in #3675.

25. According to IBERIABANK (now First Horizon Corporation), all ACH transactions in September 2019 were processed outside the State of

Florida, specifically the State of Louisiana, where IBERIABANK previously was headquartered. First Horizon Corporation is headquartered in the State of Tennessee.

26. Bank of America records for the NextGear Automotive checking account ending in #3675 for the statement period beginning September 1, and ending September 30, 2019, show 24 entries for "RETURN OF POSTED CHECK" with line-item amounts that correspond to those listed in the above table.

27. According to a sworn statement that S.A. provided to law enforcement, on or about September 25, 2019, **KAAKATI** informed FlexPlus that the remaining car inventory for which he had not received titles were located at an auto auction company in Orlando, Florida. FlexPlus was not able to recover any of the inventory of which **KAAKATI** had defrauded it.

## CONCLUSION

28.     Based on the foregoing information, I respectfully submit that probable cause exists to believe that Hani Wafik **KAAKATI** committed wire fraud, in violation of 18 U.S.C. § 1343.

Kimberly Simmonds
Task Force Officer
Federal Bureau of Investigation

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 4(d) before me this 23d day of April 2024.

HON. EMBRY KIDD
United States Magistrate Judge